ROBERT ROSENBLITT, Appellant, v EVE ROSENBLITT, Respondent.

Second Department, March 11, 1985

#### APPEARANCES OF COUNSEL

*Finkelstein & Robinson* (*Miriam M. Robinson* and *Alan D. Scheinkman* of counsel), for appellant.

*Joel R. Brandes, P. C.,* for respondent.

#### OPINION OF THE COURT

WEINSTEIN, J.

In this matrimonial action, custody of the parties' three minor children is being contested. Plaintiff husband was awarded

interim custody of the children in May 1983, pending a hearing on the issue. On or about June 9, 1983, after a hearing at which no psychiatric evaluations were made available, plaintiff was awarded temporary custody with a direction that defendant be entitled to visitation two days per week. Defendant has allegedly been deprived by plaintiff and his parents of all contact with the children since June 23, 1983. While plaintiff admits having suspended defendant's visitation with their children, he attributes his action to defendant's violation of the court's directive that all visitation would cease unless defendant refrained from consorting with a Herbert Ginsberg.

On June 22, 1983, defendant brought the children to a child psychiatrist, Dr. Alan M. Levy, in order that he might evaluate their mental condition and prescribe treatment, if necessary. Based upon a meeting with the children, extensive conversations with defendant and tape recordings, which she had provided, Dr. Levy informed defendant that an "emergency situation" exists which constitutes an actual danger to the children and which necessitates immediate attention.

Defendant thereafter moved, by order to show cause, for an order (1) directing that plaintiff submit to a psychiatric evaluation by Dr. Levy; (2) awarding defendant temporary custody of the infant issue; (3) directing an immediate hearing to ascertain whether an emergency situation exists; (4) directing that the children be given immediate psychiatric therapy; (5) directing that the previously ordered forensic examinations be expanded to include an evaluation of plaintiff's parents; and (6) awarding defendant's counsel reasonable counsel fees. Special Term denied defendant's motion with the exception of directing plaintiff to submit to a psychiatric evaluation and expanding the forensic evaluations to include plaintiff's parents. While defendant's request for temporary custody of the infant issue was denied, plaintiff was directed to permit defendant visitation in accordance with the terms of an earlier court order.

■ The issue presented for our determination is whether, in situations where child custody is being contested, the noncustodial spouse may obtain an order that the custodial spouse be examined by a psychiatrist designated by the noncustodial spouse. We conclude, under the circumstances of this case, that a further evaluation of plaintiff is unnecessary and inappropriate. Furthermore, even were we to conclude that a further psychiatric evaluation is warranted, defendant's partisan expert would not be the proper person to conduct it.

Plaintiff does not dispute the generally accepted principle that parties to a contested custody proceeding place their physical

and mental conditions in issue. Where both parties are seeking custody of the infant issue of their marriage, the health of a parent is clearly a relevant, although by no means the sole, consideration (*Matter of Darlene T.,* 28 NY2d 391, 395).

CPLR 3121 provides that when the mental or physical condition of a party is in controversy, any other party may serve notice and direct that the former submit to a physical or mental examination by a designated physician. CPLR 3121 is applicable in matrimonial actions (*see, Wegman v Wegman,* 37 NY2d 940, 941). Recognizing the potential for abuse in such cases, the Court of Appeals in *Wegman v Wegman* (*supra,* p 941) nevertheless noted that the courts' "broad discretionary power to grant a protective order 'to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts' (CPLR 3103) should provide adequate safeguards".

The essence of plaintiff's argument is that the requirement that he undergo further evaluation was superfluous inasmuch as forensic evaluations of the parties and the children had already been completed. Absent any proof that the investigatory and analytical efforts of the Forensic Division of the Department of Social Services were in any respect deficient, Special Term's order compelling him to submit to further evaluation, this time by defendant's privately retained expert, was duplicative and harassing.

It is uncontroverted that forensic evaluations of the parties and the children had already been conducted by the Forensic Division of the Department of Social Services at the time of defendant's application, although formal reports had not yet been submitted to the court. Where forensic examinations have been conducted and there is no showing that such examinations were in any way inadequate or deficient, it is an abuse of discretion to compel one particular party to submit to further evaluations at the insistence of the adverse party where not a single reason is presented in support of the application. The sole justification advanced by defendant is that an examination of plaintiff by Dr. Levy would enhance the credibility of her expert. It was only after defendant had been unsuccessful at a hearing and after the Forensic Division had conducted its examinations that defendant sought to enlist the aid of Dr. Levy. A disgruntled litigant should not be permitted to thus compel an adversary to join in his or her efforts to shop around for favorable expert testimony.

Moreover, there would be little value in plaintiff's examination by Dr. Levy inasmuch as Dr. Levy has already come to a

conclusion regarding this case. To order plaintiff to submit to a highly personal and subjective interview conducted by Dr. Levy would, in effect, amount to bolstering the preconceived opinions of defendant's retained expert.

While it is entirely appropriate for trial courts, confronted with a contested custody issue, to call upon qualified and impartial health care professionals to render reports based upon examinations of the children and parents, courts have expressed a preference that such examinations be conducted by neutral and impartial professionals. Further, as the Court of Appeals has held: "Nor is there any reason which would prevent the court in the proper exercise of a judicial discretion from calling upon qualified and impartial psychiatrists, psychologists or other professional medical personnel, preferably under the auspices of the probation officer or family counselling unit connected with the court, to examine the infant or to examine the parents also if they will submit to such examination. In such case the psychologists, psychiatrists or other medical personnel could not report to the court in the absence of stipulation by the parties but would be available to be called as witnesses by either party subject to cross-examination by the other party under common-law evidence rules" (*Kesseler v Kesseler,* 10 NY2d 445, 452, *rearg denied* 11 NY2d 721; *see also, Matter of Alexander L.,* 60 NY2d 329; *Giraldo v Giraldo,* 85 AD2d 164, 171-172, *appeal dismissed* 56 NY2d 804; *Matter of Barth v Barth,* 74 AD2d 1002; *De Marinis v De Marinis,* 74 AD2d 815, 816; *Matter of Schloss v Schloss,* 63 AD2d 898, 899).

Appellate courts have been known to specifically condemn the use of an examining psychiatrist or physician who is demonstrably hostile towards counsel for one side in the litigation (*Shapiro v Shapiro,* 89 AD2d 538; *Miocic v Winters,* 75 AD2d 887). Consistent with this principle, it would be patently unjust to permit defendant's retained expert, who has already reached a conclusion favorable to defendant, to conduct a psychiatric evaluation of plaintiff.

The overriding concern where custody is in issue must necessarily be the best interests of the child (*see,* Domestic Relations Law §§ 70, 240 [1]; *Matter of Bennett v Jeffreys,* 40 NY2d 543; *Matter of Gloria S. v Richard B.,* 80 AD2d 72, 76). Absent specific behavior on the part of plaintiff which the court deemed to be in conflict with the children's social, emotional or moral welfare, it was error to have ordered plaintiff to submit to an additional examination by a psychiatrist designated by defendant. It would, moreover, constitute a dangerous precedent to

indefinitely delay a decision in order to allow for further psychiatric examinations of a party by experts chosen by his or her adversary. The very nature of psychiatric examinations, involving as they do the emotions and perceptions of the examinee, presents a danger that a subjective and/or biased conclusion may result. As succinctly expressed by the Utah Supreme Court: "The question of a person's sanity nearly always involves considerable delicacy. If mere allegations in an affidavit compelled the court to require a party to submit to a psychiatric examination, a way would be open for opposing parties to harass, annoy or intimidate each other. The potential for mischief in such a situation is obvious and the court would always be well advised in exercising caution and restraint in regard to such request" (*Stone v Stone*, 19 Utah 2d 378, 381, 431 P2d 802, 804). Accordingly, we conclude that, absent any indication that the investigatory and analytical efforts of the Forensic Division were deficient in any respect, Special Term committed an abuse of discretion in ordering plaintiff to submit to an examination by defendant's privately retained psychiatrist.

We note furthermore that Special Term was without jurisdiction to compel plaintiff's parents to submit to forensic evaluations conducted by the Forensic Division. Plaintiff's parents are not parties to this litigation, nor were they served with copies of the order to show cause or afforded an opportunity to be heard on the motion (*see,* Siegel, NY Prac § 58, at 59). Moreover, defendant failed to demonstrate that such an examination of plaintiff's parents was necessary. Accordingly, that portion of the order under review which expanded the forensic evaluations conducted by the Forensic Division to include plaintiff's parents was erroneous and should be reversed.

LAZER, J. P. (concurring in part and dissenting in part). The over-all issue, of course, is the right of a child custody litigant to have her retained psychiatrist examine the adverse parent. More specifically, we must decide whether Special Term abused its discretion in directing that plaintiff submit to a mental examination by the psychiatrist retained by the defendant. In view of the clear mandate of CPLR 3121 (a) and the uncontroverted allegations of both the defendant and the psychiatrist that plaintiff is attempting to turn the children against defendant, I believe that this aspect of Special Term's order was well justified and it should be sustained.

The grounds for requiring plaintiff to submit to the psychiatric examination are twofold. First, the court must determine the best interests of the children in a custody dispute and is obligated to "become aware of and to seek out every bit of relevant

evidence and advice on the subject" (*Anonymous v Anonymous,* 34 AD2d 942). When a claim is made that the children are being damaged because a party to a divorce action is seeking to use them as a weapon against the adverse spouse, further investigation is warranted. Second, there is a clear legislative mandate for such an examination. CPLR 3121 (a) provides that when the physical or mental condition of a party is in controversy, the other party may demand that he or she submit to an examination by a physician designated by the party making the demand.

The value of psychiatric evaluations of both the children and the parents in a matrimonial custody dispute has long been recognized by the courts of this State (*see, Kesseler v Kesseler,* 10 NY2d 445, *rearg denied* 11 NY2d 721; *Giraldo v Giraldo,* 85 AD2d 164). Indeed, the Court of Appeals has held that CPLR 3121 is applicable to matrimonial actions whenever the physical or mental health of a party is in controversy (*Wegman v Wegman,* 37 NY2d 940). While recognizing that CPLR 3121 applies to matrimonial actions and that the parties to a contested custody proceeding place their physical and mental conditions in controversy (*see generally, Matter of Barth v Barth,* 74 AD2d 1002), my colleagues of the majority now hold that in the absence of a showing that court-ordered forensic evaluations are deficient, a party's CPLR 3121 request for further psychiatric evaluation is to be deemed "duplicative and harassing" and, therefore, it must be denied. At that point, we part.

CPLR 3121 confers upon a party the right to direct an adversary whose mental or physical condition is in controversy to submit to an examination by a physician of the litigant's choosing. Nothing in the statute suggests that this right is any less routinely available to a matrimonial litigant seeking child custody than it is to the defendant in a medical malpractice or other personal injury action. However, while the majority presumably would not quarrel with the right of a litigant in an action involving damages for personal injuries to compel the adversary to undergo a psychiatric evaluation by a designated psychiatrist, they now deny the same right to a parent who claims that the welfare of her children is being damaged and who asserts a right as significant and fundamental as the custody of her children.

Of course, the courts call upon impartial health case officials, such as the Nassau County Department of Social Services, to make psychological evaluations of the children and the parties to a custody dispute (*see, Kesseler v Kesseler,* 10 NY2d 445, *supra; Giraldo v Giraldo,* 85 AD2d 164, *supra*). That does not

imply, however, that parties to proceedings as crucial to human relations as custody litigation should be deprived of the ability to obtain or provide further information through the use of additional experts. It certainly cannot mean that the views of such retained experts cannot play a valid and important role in the decision-making process. The art or science of psychiatry is not so precise that the opinion of a single "impartial" expert resolves all issues. Were that so, there would be no need to allow more than a single impartial psychiatrist to testify when a criminal defendant seeks to plead insanity. Rather, the reverse is true — the larger the pool of experts, the greater the stream of potentially useful information made available to the court. Indeed, the value of obtaining a multiplicity of opinions on questions of mental health has been specifically recognized by the Legislature in a variety of contexts. Thus, the opinions of at least two experts must be obtained whenever a criminal defendant's capacity to stand trial is in doubt (see, CPL 730.20) or whenever an alleged juvenile delinquent's competence is in question (see, Family Ct Act § 322.1). Similarly, to be involuntarily committed to a mental institution, a person must be examined by at least two experts (see, Mental Hygiene Law § 9.27). Quite apart from the litigant's right to have an adversary examined by a designated psychiatrist, such evaluations can be a useful supplement to the "impartial" court-ordered evaluations.

The essence of the majority's holding is that a psychiatric examination of a party by a designated expert retained by the opponent is "duplicative and harassing" whenever that party has been or will be subjected to such an examination by an "impartial" court-appointed expert, unless the party seeking the examination can establish that the "impartial" examination was or will be in some way defective. Although the holding states that this rule is limited to custody disputes, it provides no reason for treating such proceedings differently from other cases in which the court may order a psychiatric examination by an "impartial" expert. If such an examination is to be deemed "duplicative and harassing" in a custody dispute, it would seem equally "duplicative and harassing" in a juvenile delinquency proceeding, a proceeding to terminate parental rights, a support proceeding, or indeed any proceeding in which a court may have the power or the duty to order a mental examination by an "impartial" expert (see, e.g., Family Ct Act §§ 251, 322.1; Martin v Martin, 72 Misc 2d 222).

To the extent that the instant holding carves out an exception applicable only to custody disputes, I believe it is unjustifiable

(*see,* Siegel, NY Prac § 344, at 422-23); to the extent that it sets forth a general approach to all cases involving psychiatric examinations by court-ordered experts, I believe it is an unwarranted departure from the normally broad disclosure rules recognized in this State (*see, Allen v Crowell-Collier Pub. Co.,* 21 NY2d 403; *Watson v State of New York,* 53 AD2d 798; Siegel, NY Prac §§ 343, 344). Absent special circumstances that would render an examination unjustified in a particular case, a litigant in a child custody proceeding is entitled to have a designated psychiatrist examine an opponent whose mental condition is in controversy, despite the fact that the opponent has been or will be examined by a "neutral" court-appointed psychiatrist (*cf. Marshall v Vyziak,* 40 AD2d 1051).

Apart from its general rationale, the majority also concludes that in any event an examination of plaintiff by Dr. Levy would be inappropriate because the doctor has already formed an opinion after examining the children. While Dr. Levy's affidavit makes it clear that he has formed an opinion regarding the children's condition, this is not a case similar to those cited by the majority where the examining physician or psychiatrist is hostile toward one side in the litigation because of some personal animosity (*see, e.g., Shapiro v Shapiro,* 89 AD2d 538; *Miocic v Winters,* 75 AD2d 887). Indeed, there is no suggestion that Dr. Levy has ever met plaintiff or his attorneys. The doctor has done precisely what any psychiatrist consulted under similar conditions might be expected to do; he has examined his patients and formed an opinion concerning their psychological and emotional condition. In order to further verify this diagnosis, he deems it important that he examine the person in whose custody the children live and whom he assumes most likely to be responsible for their condition. To hold that because Dr. Levy has formed an initial opinion he must be precluded from continuing his investigation since any further observations he may make will be biased and thus render his testimony inadmissible, is to hold that an expert who forms an initial opinion loses (1) the ability to complete his investigation if it involves obtaining further disclosure and (2) the ability to proffer an ultimate opinion to the court.

Nor should the mere fact that Dr. Levy has been retained by defendant disqualify him. Unless we intend to dispense with the adversarial process as we know it, it is to be expected that parties will continue to seek the services of experts in the expectation that the views of these experts will support the retaining parties' positions. While it is hardly a secret that this system contains the seeds of venally induced distortion, the cure

lies not in abolition of the system, but in the fact finder's ability to evaluate the potential bias when considering expert testimony. Furnished with the right to cross-examine and to use other experts, the Bar has long demonstrated the capacity to provide fact finders with adequate information to arrive at the truth or something close to it. That is the nature of the fact-finding process under which we operate and that is why there is no justification for holding the system inapplicable when the custody of children is in issue.

"[I]n a custody proceeding arising out of a dispute between divorced parents, the first concern of the court is and must be the welfare and the interests of the children" (*Matter of Lincoln v Lincoln,* 24 NY2d 270, 271-272; *see also, Matter of Gloria S. v Richard B.,* 80 AD2d 72). In this case, it is most difficult to discern from the short record and the conflicting allegations precisely what transpired between the instant parties and with their children since the action commenced. Quite obviously, there is a great deal of animosity between the litigants, animosity which manifests itself as it all too often does in child custody disputes, in a bitter struggle between the parents that has the children as both its objects and its victims. It is undisputed that plaintiff has taken it upon himself to unilaterally terminate defendant's court-ordered visitation rights, an act which may well be inconsistent with the best interests of the children (*see, Entwistle v Entwistle,* 61 AD2d 380, 384-385). It is also undisputed that defendant has in her possession tape recordings, *inter alia,* of plaintiff instructing one of the children to make disparaging remarks about defendant. It may well be, as Dr. Levy asserts, that an "emergency situation" exists. Certainly, plaintiff's behavior, if the allegations are true, would be "in conflict with the children's social, emotional or moral welfare". Under the circumstances, I cannot conclude that an evaluation of the plaintiff by Dr. Levy, who has extensive credentials in "disorders of visitation and child custody cases", is "duplicative and harassing".

While Special Term exercised its discretion properly in ordering plaintiff to submit to an examination by Dr. Levy, to further protect plaintiff's interests, I would also direct that he be permitted to have counsel present during the examination (*cf. Matter of Alexander L.,* 60 NY2d 329; *see generally,* Besharov, Supplementary Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 251, p 9 [1984-1985 Pocket Part]). To minimize the potential for disruption of the examination, however, counsel should remain outside the examination room or at least out of the view of the parties to the examination

(*see, Matter of Tanise B.*, 119 Misc 2d 30) and the attorney's role must be limited to that of an observer (*see, Matter of Lee v County Ct.*, 27 NY2d 432; CPL 250.10 [3]; *Matter of Jose T.*, 126 Misc 2d 559). I would deny plaintiff's request that a transcript be made of the examination, although counsel can, of course, take notes. Any benefits to be gained by a transcript would appear to be outweighed by the additional intrusion into the examination (*see, Matter of Jose T., supra*).

I agree with my colleagues that the portion of the order which required plaintiff's parents to submit to examinations must be set aside because plaintiff's parents were not parties to the action and were not served with copies of the order to show cause or granted an opportunity to be heard (*see generally,* Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3121:3, p 571). In light of this conclusion, it is unnecessary to determine whether such examinations would have been appropriate had plaintiff's parents been properly notified.

O'CONNOR and LAWRENCE, JJ., concur with WEINSTEIN, J.; LAZER, J. P., concurs insofar as that branch of defendant's motion which sought an order directing that the forensic examinations previously ordered by the court be expanded to include an evaluation of plaintiff's parents should be denied but dissents and votes to grant that branch of defendant's motion which sought an order directing plaintiff to submit to a psychiatric evaluation by Dr. Alan M. Levy, with an opinion, in which BROWN, J., concurs.

Order of the Supreme Court, Nassau County, entered August 12, 1983, reversed insofar as appealed from, with costs, and those branches of defendant's motion as sought an order directing plaintiff to submit to a psychiatric evaluation by Dr. Alan M. Levy and directing that the forensic examinations previously ordered by the court be expanded to include an evaluation of plaintiff's parents with whom the parties' children resided, are denied.