OPINION OF THE COURT
George L. Jurow, J.
In this custody petition involving a three-year-old child, *488 petitioner mother moves for a pretrial order pursuant to CPLR 3121 directing respondent father to appear for a psychiatric examination by petitioner’s designated expert. Respondent opposes the motion, relying on Rosenblitt v Rosenblitt (107 AD2d 292).
In Rosenblitt (supra, at 294), a sharply divided panel of the Appellate Division in the Second Department denied as "duplicative and harassing” a noncustodial spouse’s motion to compel the custodial spouse to be examined by the movant’s own psychiatric expert, where the custodial spouse had already been examined by an impartial court-designated expert, and the movant did not establish that the prior examination was inadequate or deficient. Both Rosenblitt and the instant case deal with the troublesome issue of the court’s role in limiting multiple psychiatric examinations, under circumstances where the parties seek to retain their own experts in addition to so-called "impartial” court-ordered examiners.
The First Department, where this court sits, has not addressed this question of limitations on pretrial psychiatric discovery in custody disputes. This court is, of course, bound by an appellate decision in another department, provided it is on point. (See, Mountain View Coach Lines v Storms, 102 AD2d 663.) The question is whether Rosenblitt (supra) is controlling in the instant matter.
The instant matter is before the court under somewhat unusual circumstances: The parties in 1985 entered into a separation agreement providing for "joint custody” of their child. The agreement detailed physical custody, visitation, and decision-making arrangements, and also contained an arbitration clause providing for arbitration by a psychiatrist or psychologist in the event of disputes concerning the child’s welfare. Numerous disputes were subsequently submitted to a designated psychiatrist arbiter. After the arbiter dealt with the latest in a series of visitation disputes, the petitioner commenced a special proceeding in Supreme Court which resulted in an order vacating the arbitration award. The Supreme Court decision further held that because there was "serious disagreement between the parties with regard to custody, visitation, care and education” of the child, the parties are referred to Family Court for a hearing on all matters involving the custody, visitation, health and welfare *489 of the child.[1] Petitioner mother then filed the instant petition to vacate the joint custody arrangement in the separation agreement, and to obtain sole custody. Respondent father has cross-petitioned to retain the existing joint custody arrangement, or alternatively, for sole custody.
It is customary in Family Court proceedings for the court to order mental health examinations to be conducted by clinicians on the staff of the Family Court Mental Health Services clinic. (See, Family Ct Act § 251; Kesseler v Kesseler, 10 NY2d 445, 452.) These clinicians are psychologists or psychiatrists who serve as impartial and independent examiners. Accordingly, when the parties first appeared before this court following the filing of the custody petitions, the court indicated that it intended to follow the customary procedure and have the parties so examined at the court clinic. However, because the parties had financial resources, and had in the past consulted mental health experts, the court gave the parties the option of stipulating to an agreed-upon outside mental health professional, whose credentials would be acceptable to the court, to act as the "impartial” expert. The parties agreed to this course, and were in the process of selecting the impartial expert when the petitioner filed the instant motion seeking an examination by her own psychologist in addition to the examination by whoever is selected as the impartial expert.
In her motion papers and in oral argument petitioner relies on CPLR 3121 which states in part that "After commencement of an action in which the mental or physical condition * * * of a party * * * is in controversy, any party may serve notice on another party to submit to a physical, mental or blood examination by a designated physician”. (CPLR 3121 [a].) In addition to this claimed CPLR right, petitioner argues that an additional examination by her own expert is beneficial because "this area of expertise may not be such an exact science as to allow for any one definitive view”.
In opposing the motion, respondent seeks a protective order pursuant to CPLR 3103 limiting further joint evaluation of the parties to the outside impartial expert. Respondent argues that, because the parties have been previously involved with a variety of mental health professionals, if petitioner’s motion is granted, respondent will also seek a mental health examination of petitioner by respondent’s own clinician, thus raising the likelihood of numerous mental health expert witnesses at *490 trial, involving lengthy and duplicative testimony. Concludes respondent, "There are enough psychiatrists already involved with the parties herein”. This is the context in which the parties are before the court, disputing the question of the scope of pretrial psychiatric discovery.
It is undisputed that CPLR 3121 is applicable to matrimonial actions and, if appropriate, to custody proceedings in Family Court. (See, Wegman v Wegman, 37 NY2d 940; Martin v Martin, 72 Misc 2d 222; Family Ct Act § 165.) However, Wegman also contained the admonition that because of a "potential for abuse” in these types of cases, the courts retain "broad discretionary power to grant a protective order 'to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts’ ” (supra, at 941).
To the extent that Rosenblitt (107 AD2d 292, supra) is the only appellate authority speaking most directly to the issue before the court, it is necessary to look at that decision and its fact pattern more closely.[2] In Rosenblitt, plaintiff had already obtained temporary custody at an initial hearing. In addition, independent forensic examinations had been completed. When a subsequent dispute arose, defendant obtained her own psychiatric expert, a Dr. Alan Levy, whom she claimed believed that an emergency situation existed regarding the children. Defendant wanted Dr. Levy to examine the plaintiff in order to further assess the situation. In rejecting defendant’s motion for the additional psychiatric examination as "superfluous, duplicative, and harassing”, the majority in Rosenblitt pointed out that, "It was only after defendant had been unsuccessful at a hearing and after the Forensic Division had conducted its examinations that defendant sought to enlist the aid of Dr. Levy. A disgruntled litigant should not be permitted to thus compel an adversary to join in his or her efforts to shop around for favorable expert testimony” (supra, at 294). The court further referred to Dr. Levy as a retained expert who had already reached a conclusion favorable to defendant, and that to force plaintiff to submit to an examination would be unjust in simply bolstering the preconceived opinions of defendant’s partisan expert. Other, and broader, language in the majority opinion expressed the view that trial courts in con *491 tested custody cases should preferably call upon neutral and impartial professionals to conduct the necessary examinations.
The minority in Rosenblitt (supra) acknowledged the value of utilizing impartial experts in custody disputes, but did not see this procedure as limiting the otherwise applicable CPLR 3121 right of a party to utilize their own retained expert as well. After pointing out numerous statutory provisions mandating psychiatric examinations by more than a single clinician, the minority concluded that "The art or science of psychiatry is not so precise that the opinion of a single 'impartial’ expert resolves all issues” (supra, at 298). The minority seemed to perceive the majority in Rosenblitt as carving out an exception to the usual broad pretrial disclosure rules by limiting discovery in custody disputes and therefore "dispensing] with the adversarial process as we know it” (supra, at 299). While acknowledging the potential for distortion in the utilization of partisan retained experts, the minority would let the fact finder sift through the issue of bias in considering expert testimony, in order to allow for the value of a multiplicity of opinions on questions of mental health in custody disputes.
Although the court is bound by the majority opinion in Rosenblitt (supra), there are several distinctions between Rosenblitt and the case at bar. First, the impartial mental health examinations are yet to be conducted. Second, petitioner’s retained expert has not yet conducted an examination, and it is not alleged that the expert has formulated an opinion at this point. Third, the potential for delay,[3] if petitioner’s motion is granted, is minimal since the outside impartial expert has not yet conducted its examination, nor even been selected. Fourth, the additional examination can hardly be considered harassing or prejudicial since both parties have an acknowledged history, prior to the onset of litigation, of seeking out the assistance of mental health professionals. Finally, and most significant, the context in which this custody dispute comes before the court, namely, following a breakdown of a complex separation agreement involving joint custody, arbitration, provisions, and mental health professionals as arbiters, already places this case in a pretrial posture that is out of the *492 ordinary and far more complex in its prior utilization of mental health experts.
In this regard, although respondent contends that the prior involvement of numerous mental health professionals with the parties should be the basis of limiting further examinations, it is noteworthy that none of these various experts have evaluated the parties subsequent to the onset of this litigation. Although the motion papers do not provide much detail concerning the prior role of these experts, it appears that several acted as the parties’ individual therapists, some as the parties’ marital therapists, and at least one acted as the psychiatric arbiter under the separation agreement. Whatever these professionals may have done was not in the current context of one party to the separation agreement concluding that their joint custody arrangement has broken down, forcing a judicial review of the custodial agreement and a contest for sole custody. Accordingly, a fresh look at the parties’ custodial arrangements in order to determine what would now be in the child’s best interests, as urged by the Supreme Court and as now required by the cross petitions before the court, necessitates a current and updated review by mental health experts. Rather than being duplicative of whatever prior mental health work transpired, petitioner’s motion would add a new assessment in the more relevant context of this newly commenced litigation, a situation markedly changed from the past in which the parties were endeavoring, with whatever results, to abide by their joint custody arrangement.
The court therefore believes that the Rosenblitt majority opinion can be interpreted on two levels. On the narrower level, the opinion rejects the use of a partisan retained expert under specific circumstances involving preconceived opinions, potential for delay, harassment, and duplication. On the broader level, the opinion enunciates the principle that mental health examinations in contested custody cases ought to preferentially be conducted by neutral and impartial professionals, rather than by partisan retained experts.
To be clear, this court is entirely in accord with the broad principle favoring the use of impartial professional experts in custody disputes. The advantages to the use of "impartíais”, whether selected from court clinics or otherwise, compared with the disadvantages and problems in the use of partisan retained experts, are numerous and need not be detailed *493 here.[4] In fact, as already noted, as its first order of business in this matter the court proceeded with arrangements to ensure the presence at trial of an impartial mental health examination report. However, the court believes that under appropriate circumstances, partisan retained experts may be utilized to supplement impartial court-ordered evaluations. In its analysis of the instant case the court, for the reasons outlined above, believes that the negatives relating to the type of partisan evaluations condemned by the Rosenblitt majority are sufficiently minimized so as to permit the type of examination otherwise sanctioned by CPLR 3121.
It may be that, on the broadest level, there is an inherent conceptual conflict between using impartial experts to conduct mental health examinations as opposed to utilizing experts retained by the opposing litigants. Different conceptions of the truth-seeking process in litigation, and of the merits and demerits of the adversary system in custody litigation, no doubt underlie this conflict, as illustrated by the contrasting opinions in Rosenblitt (supra). It is beyond the role of this court to resolve this conflict with finality, except to note its presence and its manifestations as expressed in cases such as Rosenblitt and in the instant matter. In certain proceedings, and the court believes the instant case to be an example, it is possible to allow both impartial examinations as well as examinations conducted by partisan retained experts to go forward, with minimal disruption to the interests of the litigants and to the substance of the litigation itself.
Petitioner’s motion is granted to the extent of directing respondent to appear for a mental health examination by petitioner’s designated expert, at petitioner’s expense, and at a location within the City of New York.

. Index No. 3678/86, June 18,1986 (per Schackman, J.).

. The Second Department reaffirmed its holding in Rosenblitt v Rosenblitt (107 AD2d 292) in Hirschfeld v Hirschfeld (114 AD2d 1006), but this brief opinion did not relate the factual nature of the case.

. Rosenblitt v Rosenblitt (107 AD2d 292, 295-296) alluded to the danger of delaying such decisions. Mental health experts have concurred in the need to resolve custody disputes as expeditiously as possible. (See, e.g., Goldstein, Freud, & Solnit, Beyond the Best Interests of the Child, at 40-47.)

. For an analysis contrasting the use of impartial versus adversary retained experts, from a viewpoint supportive of the merits of utilizing "impartíais”, see, Gardner, Family Evaluation in Child Custody Litigation.