OPINION OF THE COURT
Rhea G. Friedman, J.
The acceptance of expert witness validation testimony as a viable fact-finding tool in child sexual abuse proceedings (see, e.g., Matter of Nicole V., 71 NY2d 112 [1987]) has given rise to a frequently recurring issue: the appropriateness of a "second” validator’s interview. In both of the cases addressed by this opinion, the respondents have moved for a validation interview in addition to the one conducted by an independent expert selected by the petitioner, the Commissioner of Social Services (hereinafter SSC). In both cases SSC opposes respondents’ applications; Tiffany’s Law Guardian joins with SSC in opposing the application for the second validation interview; Allison’s Law Guardian does not oppose respondents’ application; the intervenor father does.
Tiffany M. was approximately IV2 years old when the original abuse petition was filed against the respondent maternal grandparents. The petition alleged that each had physically abused their granddaughter by repeated acts of punching, slapping, and kicking her. In addition, the petition named Tiffany’s mother as a respondent and alleged that the mother’s retardation and mental illness resulted in her failure to protect the child. Following a Family Court Act § 1027 hearing, the child was remanded; the remand continued following the Family Court Act § 1028 hearing. Tiffany remains in foster care to date.
While in foster care, the child made statements to an agency psychologist which resulted in the filing of an amended petition which alleged sexual abuse by the respondent maternal grandfather in that he "took the child Tiffany into his bed *644 and persistently touched her private parts.” At the time of respondents’ application for a validator in addition to the one retained by SSC, related criminal charges were pending against respondents and the validation process had not yet begun (see, e.g., Matter of E.M., NYLJ, Nov. 9, 1987, at 15, col 4 [Fam Ct, NY County 1987, Jurow, J.]; Matter of Meggan C., NYLJ, Dec. 17, 1987, at 27, col 4 [Fam Ct, Westchester County 1987, Lefkowitz, J.], for thorough discussions of the components of the validation process). Moreover, the clinicians at the foster care agency had assessed the child as being quite emotionally fragile. This came to my attention during the course of oral argument on applications by the petitioner and by the child’s Law Guardian to terminate or curtail visitation by the respondents.
The sexual abuse petition concerning 4 Vi-year-old Allison C. alleged that the mother’s boyfriend, "on at least one occasion * * * did fondle the child Allison’s vaginal area for his own sexual gratification”, and that the mother, despite having been informed of this incident, failed to protect the child. An allegation similar to the one against the mother was originally leveled at Allison’s father, but was withdrawn against him five days after the filing of the petition. The father’s application for intervenor status was granted (Family Ct Act § 1035 [d]) and he is represented by his retained attorney who also represents him in his divorce action against the mother. The petition was also amended to include Allison’s seven-year-old brother as a subject child; he has, due to emotional problems, been in residential treatment during the pendency of the case.
Prior to the filing of the abuse petition, Allison’s parents had been embroiled in a bitterly contested divorce case (extensive references to which were made during preliminary hearings in this case) and remain so to date (for some period of time during the pendency of the matrimonial action, the mother, the father, and the mother’s boyfriend all resided in the same co-op apartment with the children). Following an extensive section 1028 hearing over the course of four days which included (on consent of all attorneys) an in camera interview with the child Allison in the presence of the Law Guardian, I determined that the petitioner, SSC, had sustained its burden of proof to justify the continued removal of the child Allison from the respondents. Allison was released from foster care to the nonrespondent father under SSC *645 supervision and respondents were accorded visitation rights (supervised visitation only for the boyfriend).
At the conclusion of the section 1028 hearing, based upon the fact that the allegations did not lend themselves to potential medical corroboration and based upon the inconclusive nature of the in camera interview, the need for a validation examination was apparent. The parties, including the intervenor father, originally agreed to share the costs of an independent expert in order to expedite the proceeding, but then withdrew this offer, citing financial constraints. However, in the interim, the Queens County District Attorney’s Office, in the course of the related criminal investigation against the respondents herein, retained the services of the social worker who is their consultant for such investigations. The petitioner, SSC, was to arrange to have this witness available for the Family Court case as well. Although the case was adjourned for approximately two months to allow for validation interviews, the validator did not commence the process until approximately one week before the scheduled trial date (a process that eventually consisted of two interviews in October 1988 totaling about two hours and one interview in early January [duration unknown]). Also of note is that in this interval, the respondents have been arrested as a result of charges filed by the Queens District Attorney’s Office.
The respondent mother proposes a specific expert to conduct what, in effect, would be a second validation interview (the order sought is phrased as one for a psychiatric examination of the child Allison and of the nonrespondent father). The proposed expert, who himself has submitted an affidavit in support of the respondent’s motion, is a board certified psychiatrist with quite impressive credentials who specializes in sex abuse and custody cases. He has agreed to accept payment in accord with County Law § 722-c as I permitted the mother to substitute court-assigned counsel for her retained attorney after she demonstrated changed circumstances resulting in her present finanical inability to continue paying the attorney she had retained.
Article 10 proceedings are civil in nature and as such are subject to the Civil Practice Law and Rules (CPLR 101). Family Court Act § 165 provides that if a method of procedure is not presented in the Family Court Act, the CPLR shall apply “to the extent that they are appropriate to the proceeding involved.” CPLR 3121 (a) states in part that "After commencement of an action in which the mental or physical *646 condition * * * of a party * * * is in controversy, any party may serve notice on another party to submit to a physical, mental or blood examination by a designated physician”. As such, this section expresses no limitation on the number of examinations permitted; that determination is left to the court’s discretion. (See, e.g., Carden v Callocchio, 100 AD2d 608 [2d Dept 1984]; Mignott v Sears, Roebuck & Co., 86 AD2d 794 [1st Dept 1982]; see also, Matter of Michelle A., 140 AD2d 604 [2d Dept 1988] [discussion of the holding in Rosenblitt v Rosenblitt (107 AD2d 292 [2d Dept 1985]) invalidating a CPLR 3121 order directing a child to be examined by a psychiatrist retained by one of the parties as limited to child custody cases].)
In determining whether any further examination of the child is proper I have considered a number of factors in each case: (1) whether the requested relief will have an adverse effect on the child; (2) the pretrial posture and context in which the sexual abuse allegations arose; (3) the actual and perceived neutrality of the initial validator; (4) the qualifications and independence of the proposed second validator; and (5) the potential for delay of resolution of the case where a second validation permitted.
Before I apply this analytic framework to the two cases this opinion encompasses, a note is in order with regard to the protocol followed in obtaining the initial independent validator. While it is usual in article 10 proceedings and in custody cases for the Family Court to order pretrial (custody) and predispositional (art 10) mental health examinations to be conducted by independent and impartial clinicians on the staff of the Family Court Mental Health Services Clinic (see, Family Ct Act § 251), this protocol does not obtain in the case of validation experts. Rather, it is customary for SSC to contract with a validator chosen from their preapproved list. Moreover, whenever the District Attorney’s Office in this county investigates sex abuse allegations in related criminal cases, that office retains the services of the one validator (a certified social worker) who consults for them both for purposes of assessing whether the child is a "vulnerable child witness” (CPL art 65) and also for purposes of assessing whether evidence of an interfamilial child sexual abuse syndrome exists. In reality, SSC, for both fiscal reasons and because of the well-recognized undesirability of unnecessary duplicative interviews, always defers to the choice of the District Attor *647 ney’s consulting validator in cases being pursued by both offices. (See, discussion infra.)
This protocol has had a very real impact on the availability of this validator, who is after all the only expert utilized by SSC in cases pursued by the District Attorney’s Office. This court has presided over child abuse cases for over seven months. In that time, SSC has relied solely on this particular social worker for all child sex abuse cases necessitating validation evidence (i.e., there appears to have been a 100% correlation between the sex abuse allegations before me and those being investigated criminally). Remarkably, this validator has not kept one court appointment, and has frequently canceled appearances on very short notice. This is so despite the fact that, at her request, her testimony has always been scheduled on the 1 Vi days of the week she makes available for Family Court. Nor has this validator ever produced a written report for the court. Too often adjournments have been requested by SSC due to their attorneys’ inability to access this expert to ascertain whether she has completed the validation process and what her conclusions are; on a few occasions, it was even unkown whether her consultation in the criminal case was limited to a vulnerable child witness assessment or whether it encompassed validation interviews as well. Moreover, she appears to conduct the same number of interviews with each child regardless of the child’s age, abilities, and nature of the allegations. She appears never to request interviews with parents, regardless of whether or not they are respondents. These latter points are necessarily somewhat impressionistic and are gleaned from oral arguments, since I have never heard this witness testify about her methodology. I have detailed these logistical difficulties because they amount to a factor which I must consider: the likelihood that this expert will in fact appear on a given trial date.
The issue in each of these cases, then, is whether multiple validation examinations, under circumstances where a party seeks to retain its own expert in addition to a presumably impartial examiner, will be permitted. The first factor in resolving this issue is the potential adverse effect on the child resulting from a second validation. This court recognizes, as many others have, that the subject of the validation interview is a child, “not physical evidence capable of scientific testing and retesting without injury or trauma.” (Matter of Tara H., 129 Misc 2d 508, 509 [Fam Ct, Westchester County 1985, Miller, J.]; see also, position statement of Am Academy of *648 Child and Adolescent Psychiatry [AACAP] — guidelines for the clinical evaluation of childhood and adolescent sexual abuse [June 10, 1988], 27 J of Am Academy of Child and Adolescent Psychiatry [Sept. 1988] ["The child should be seen for the minimum number of times necessary and by the fewest number of people necessary”].) What also has been recognized is the respondent’s stake in the outcome — the very real possibility following an adjudication of abuse that his standing in the family will be completely eroded or significantly curtailed, along with concomitant rights to custody and visitation. (See, e.g., Matter of Carew, 131 Misc 2d 835 [Fam Ct, Suffolk County 1986, Hurley, J.].) Countervailing factors inherent in the needs of the subject child and of the respondents must be considered. The criteria for determining the issue of whether there should be multiple validation examinations cannot be solely that the child may be traumatized. (See, e.g., Matter of Carew, supra, at 841.)
The child Tiffany M. has already been psychologically examined and has been found to be extremely emotionally fragile. She is easily traumatized during visitation at the agency with the respondent grandmother and mother (there is no visitation permitted to the respondent grandfather at this time). In addition to her interviews by the foster care agency psychologist, she is in immediate need of therapy. No such emotional distress has been noted concerning the child Allison. She resides with her father, visits and speaks with the respondents without apparent distress and is not in need of therapy. She was able to withstand interviews with a detective and Assistant District Attorney prior to the completion of the validation process. It is also telling that Allison’s Law Guardian, charged with representing her best interest, does not oppose the motion for a second validation opinion, and has not sought a protective order (CPLR 3103).
Trauma to the child must be evaluated along with the other factors noted above, particularly the pretrial posture and context in which the sexual abuse allegations arose. The case of Allison C. is in a far more complex pretrial posture than is the case of Tiffany M. Prior to commencement of this litigation, Allison’s parents were involved in a protracted and bitter divorce case. The custody issue before the Supreme Court remains in abeyance pending the resolution of these abuse allegations. In the divorce case, the parties, the intervenor and respondent herein, had been examined by at least one retained mental health expert.
*649 Matrimonial disputes over custody and visitation furnish what is probably the most difficult context within which to evaluate the truth or falsity of sexual abuse allegations. The AACAP guidelines cited above note this phenomenon and state: "Under such circumstances, the clinician should consider observing the child separately with each parent * * *. Resistance from a parent alone is not a reason to avoid this part of the evaluation.”
Moreover, the sexual abuse allegation in the Tiffany M. case (supra) is but one allegation among other charges of physical abuse and parental neglect. Potential medical corroboration of the physical abuse allegations is available (as revealed during the section 1028 hearing). No clinical literature or case law has been found which suggests that the absence of validation by a second expert negates unequivocal evidence of physical abuse or exculpates the respondent. In contrast, the sexual abuse allegation in the Allison C. case (supra) is the only allegation against the respondents.
The fact that it is the petitioner, SSC, who retains the initial validator does not necessarily undermine the validator’s neutrality. When SSC seeks a validation opinion, it is to ascertain whether that expert believes that the child has been sexually abused. Consistently, when no evidence of abuse has been found, SSC has shared this information with the court and with opposing counsel and has treated the case accordingly. What is more problematic here is the almost unsurmountable difficulty in perceiving as neutral a validator retained by the law enforcement agency prosecuting the respondents herein and intended as a prosecution witness in the criminal case. It is unrealistic to expect any attorney who represents a respondent facing both Family and Criminal Court charges of sexual abuse to advise his client to cooperate with the validator retained as consultant to the District Attorney, even though parental cooperation may well lead to a more fully informed validation opinion. (See, AACAP guidelines, op. cit. [the guidelines also recommend obtaining a history of the child and of the parents from the parents as part of this evaluation].) Because of the protocol followed by SSC to obtain validators, discussed earlier, the validator must inevitably appear at least to the respondents to be closer to a partisan retained expert than to a neutral and impartial mental health professional in accord with the broad principle favoring the use of impartial professional experts. (See, e.g., Rosenblitt v Rosenblitt, supra, at 295.)
*650 A second validator should be used to supplement a presumably impartial evaluation only under limited circumstances. This expert must be well qualified and emotionally neutral, open-minded and nonjudgmental. (Contrast with, e.g., Matter of Danielle P., Fam Ct, Broome County 1988, Ray, J. [denial of request for second validator with suspect credentials and methodology].) At the time the second validator was sought by respondents in Tiffany M. (supra), the first one, an independent validator to be retained by SSC, had not yet begun the process; in the case of Allison C. (supra) the validation process had begun, but was not complete.* In each, the experts sought by respondents had not yet initiated their examinations; nor was it alleged that either expert proposed by respondents had at the time of the applications formulated an opinion about the particulars of the case. This factor favors the respondents’ position in Tiffany M., since there is little possibility for delay because the SSC retained expert had not yet begun her examination. In the case of Allison C. (supra), the request for a second validator was made later, after the initial validation process had commenced (the delayed request occasioned in part by the substitution of counsel). However, in view of the consistent unavailability of the SSC validator, the factor of delay is of less import than it would be ordinarily.
Based on the above analysis, I conclude that the respondents’ application for a second validator should be denied in the case of Tiffany M. (supra) and granted in the case of Allison C. (supra). The balance of factors must be resolved in favor of avoiding additional trauma to Tiffany who is already in emotional turmoil. In the case of Allison, the value of a multiplicity of opinions about the only question in the case outweighs the slight disruption the child may experience. "The art or science of psychiatry is not so precise that the opinion of a single 'impartial’ expert resolves all issues.” (Rosenblitt v Rosenblitt, supra, at 298 [minority opn]; see also, Matter of E.M., supra [fact that two validation interviews were conducted by two qualified experts from differing clinical disciplines enhances the weight of the totality of the validation evidence].) *651 Moreover, it is only by using a validator who does not work for the prosecuting authorities that the AACAP guidelines (suggesting interviews and observations of both parents) might be followed. Therefore, respondent’s motion in the Allison C. case is granted in all respects, including an order directing the intervenor father to be examined by the second validator. (See, Family Ct Act § 251.)

 The Tiffany M. decision herein is a formal decision which follows a decision from the Bench. In the earlier decision, I directed the attorneys to confer to see whether they could agree on a mutually acceptable expert; I scheduled the case for a conference in the event no agreement was forthcoming, so that I could break the deadlock. On the day of the conference, I was presented by a fait accompli in that the consultant on retainer to the District Attorney’s Office had already involved herself in this case.