OPINION OF THE COURT
Jeffrey S. Sunshine, J.
Introduction
In the instant matrimonial action plaintiff wife, A.L., moves for an order requiring the defendant husband C.K.’s treating therapist to submit to a pretrial deposition or in the alternative to produce his notes prior to trial. The husband seeks pendente lite counsel fees from the wife claiming, inter alia, a disparity in income.
The parties were married in August 1998. They resided with their three children (ages four, six, and eight) in Park Slope, Brooklyn, New York. The husband is 50 years of age and the wife is 36 years of age.
The parties have been engaged in highly contested litigation in both the Family Court and subsequent thereto before this court. Shortly after settling the issue of custody in Family Court with a detailed custody agreement, the wife instituted this action and sought permission to relocate with the children to Pittsburgh, Pennsylvania, where she has obtained employment teaching at a university. The wife’s claim for the need to obtain the husband’s therapist’s testimony and records is based on the wife’s allegation of the husband’s alleged use and abuse of alcohol and incidents of domestic violence which occurred in the presence of the children. The husband is an attorney employed by a major New York City law firm.
*935 Discussion
Pretrial Disclosure
It is well settled that the parties to a contested custody proceeding place their mental condition at issue, thereby waiving the physician-patient privilege (see Torelli v Torelli, 50 AD3d 1125 [2d Dept 2008]; see also Baecher v Baecher, 58 AD2d 821 [2d Dept 1977]; Rosenblitt v Rosenblitt, 107 AD2d 292 [2d Dept 1985]). It is also well settled, however, that “[t]here first must be a showing beyond ‘mere conclusory statements’ that resolution of the custody issue requires revelation of the protected material” (McDonald v McDonald, 196 AD2d 7, 13 [2d Dept 1994], quoting Perry v Fiumano, 61 AD2d 512, 519 [4th Dept 1978]).
In Baecher v Baecher (58 AD2d 821 [1977], supra), the Second Department held:
“The defendant’s assertion of the psychologist-client privilege (see CPLR 4507) is without merit. Although, abstractly, the privilege applies in matrimonial proceedings (see Yaron v Yaron, 83 Misc 2d 276), in this case the defendant waived his right to the privilege by actively contesting custody, thereby putting his mental and emotional well-being into issue.”
In the case at bar, the wife, A.L., argues that the husband, C.K., submitted to the court a letter from this particular therapist which was addressed to the court. The letter reads as follows:
“Your Honor:
“I have been treating [C.K.] since March 2005. He is diagnosed with a generalized anxiety disorder. In my professional opinion, [C.K.] has been suffering with an anxiety disorder since the inception of his marital conflict. His condition has been exacerbated by the court proceedings.
“[C.K.] took a hiatus from individual treatment from August of 2006 to May of 2007 during which time he attended Inter-Care for outpatient treatment. I have seen C. [o]n a weekly basis since that time.
“In my professional opinion, [C.K.] has used alcohol to self medicate his primary anxiety disorder but does not suffer with alcohol dependence or abuse.
“[C.K.] has achieved considerable insight into his *936 condition. In addition to insight oriented psychotherapy, to help relieve his anxiety and promote better self-regulation. Recently [C.K.] purchased a home unit to continue to address his condition.
“Please contact me if you have any further questions.”
In the First and Second Judicial Departments it is well established that discovery on custody matters is limited and this court is bound to follow the general prohibition. (See Garvin v Garvin, 162 AD2d 497 [2d Dept 1990]; Corsel v Corsel, 133 AD2d 604 [2d Dept 1987]; Ginsberg v Ginsberg, 104 AD2d 482 [2d Dept 1984]; Hunter v Hunter, 10 AD2d 291 [1st Dept I960].) As noted by Justice Spolzino when sitting in Supreme Court, Westchester County, in Ochs v Ochs (193 Misc 2d 502, 506-507 [2002]),
“If the process of custody litigation is to be successful, the court’s concern for the ‘best interests of the children’ must apply not only with respect to the result, but in the means used to reach that result, as well. Custody cases are difficult, at best, not merely because the correct result is often elusive, but also because the adversarial process that is most conducive to reaching the truth is often detrimental to the relationships it is intended to protect. Thus, while it is true that the court should exercise every means possible to ensure that it has all relevant information before making a custody determination (see, Deblasio v Deblasio, 187 AD2d 551 [2d Dept 1993]; Burgel v Burgel, 141 AD2d 215, 216 [2d Dept 1988]), the court must also be cognizant of the great burden that such litigation places on the parties and the children. The process should not be permitted to defeat, through an excess of zeal in discovering every last ounce of relevant information, the beneficial effects that are intended to be achieved in the result.”
Yet, the general prohibition should not be viewed as an absolute bar. Clearly there must be a case-by-case analysis of the benefits for disclosure.
In the case at bar, the wife seeks the disclosure of the husband’s treating therapist by way of production of notes or a deposition. The gravamen of the wife’s claim for relocation to Pennsylvania is premised on her contention that defendant’s violent and abusive behavior is related to alcohol abuse, in part.
*937 While the court is sensitive to the import of parties being able to seek treatment confidentially in a protected setting, through counseling and therapy, the court must weigh the benefits of maintaining that confidentially with the best interests of the children as well as recognizing that while discovery is limited on issues of custody, there are those situations where it may be appropriate. Here, the husband has placed the issue before the court himself, by submitting a letter from his therapist to support his proposition. It would be inherently unfair to allow him to use this to support his position without allowing the opposing counsel an opportunity to rebut same.[1]
The issues of child custody, relocation and allegations of alcohol abuse do not rise to the level of a blanket invasion of the entire therapist-patient relationship. As noted recently by the Second Department in Torelli v Torelli (50 AD3d 1125 [2008]),
“ ‘CPLR 3121 (a) provides that when the mental or physical condition of a party is in controversy, any party may serve notice on another party to submit to a physical or mental examination by a designated physician. It is a generally accepted principle that parties to a contested custody proceeding place their physical and mental conditions in issue’ (Anonymous v Anonymous, 5 AD3d 516, 517 [2004]). Although the ‘broad scope of discovery permitted under the CPLR takes on particular significance in child custody disputes’ (Burgel v Burgel, 141 AD2d 215, 216 [1988]), ‘because the potential for abuse in matrimonial and custody cases is “so great” (see, Lohmiller v Lohmiller, 118 AD2d 760 [1986]; cf., Wegman v Wegman, 37 NY2d 940 [1975]; Rosenblitt v Rosenblitt[, 107 AD2d 292]), the court’s discretionary power to limit disclosure and grant protective orders is equally broad’ (Garvin v Garvin, 162 AD2d 497, 499 [1990]).”
In the case at bar a deposition of the husband’s treating therapist would provide a potential for abuse without court supervision. The husband’s treatment, in part, may be relevant, but there very well may be other areas of the therapeutic relationship unrelated to the issue at bar which should not be *938 disclosed. As such, testimony in court, subject to objection and argument on relevancy would be more appropriate than deposition testimony. Similarly, an unrestricted order to disclose all notes would also be too broad. The notes, though, may be germane to trial preparation if the wife is going to call the husband’s therapist as a witness. As such, the court will conduct an in camera inspection of the treating therapist’s notes for the court review as to relevance and subject to redaction (People ex rel. Hickox v Hickox, 64 AD2d 412 [1st Dept 1978]). The notes shall be produced on October 21, 2008, in a sealed envelope for this court to determine which portion of these documents, if any, must be turned over to the wife’s counsel, subject to redaction.
Counsel Fees
Defendant requests that this court award him counsel fees in the amount of $25,000. Defendant concedes that he is a Yale Law School graduate employed as an associate at a major New York law firm and he earned $200,000 in 2007. The wife claims that the husband is working as a part-time associate only and that had he been employed full time, his earnings would be approximately $300,000 (defendant asserts that he works 40 hours a week). The wife also claims that the husband has liquid assets of $206,000 and loaned $100,000 to a friend in the year of 2003, which remains unpaid. The husband claims that his income is limited because of his child care responsibilities and that the income he earned in 2007 was an aberration. He claims that in most years he earned approximately $70,000 a year in contrast to the wife’s earnings which exceeded $200,000 a year.
At the court’s request the wife’s recently filed tax returns for 2007 were produced. She is a nontenured faculty member in the department of theology at a university where she earns an annual income of $47,500. The wife is also the beneficiary of a family trust which paid to her taxable interest in the amount of $195,954 and dividends of $111,177. There was a $3,000 deduction for a capital loss which makes the wife’s adjusted gross income $304,131 ($195,954 + $111,177 = $307,131 - $3,000 = $304,131). The wife concedes at oral argument that from these monies legal fees in 2007 of $118,300 were paid. The husband spent $65,000 in legal fees.[2] The wife further avers that she *939 receives no child support from the husband and she pays 100% of the children’s private school tuition.
The wife requests this court to direct a sum of $45,000, which is currently being held in escrow from the proceeds of the sale of the marital property in Pennsylvania, to be distributed, at this time, equally to the parties to pay for counsel fees.
Domestic Relations Law § 237
Domestic Relations Law § 237 (a) permits the court to direct either spouse to pay counsel fees to the other “to enable that spouse to carry on or defend the action or proceeding as, in the court’s discretion, justice requires, having regard to the circumstances of the case and of the respective parties.” The award of counsel and accountant’s fees is controlled by the equities and circumstances of each particular case (see Levy v Levy, 4 AD3d 398 [2d Dept 2004], citing Domestic Relations Law § 237 [a], [d]; DeCabrera v Cabrera-Rosete, 70 NY2d 879, 881 [1987]; Kearns v Kearns, 270 AD2d 392, 393 [2d Dept 2000], lv denied 95 NY2d 760 [2000]; see Schek v Schek, 49 AD3d 625 [2d Dept 2008]).
“The intent of the provision is to ensure a just resolution of the issues by creating a more level playing field with respect to the parties’ respective abilities to pay counsel, ‘to make sure that marital litigation is shaped not by the power of the bankroll but by the power of the evidence’ ” (Silverman v Silverman, 304 AD2d 41, 48 [1st Dept 2003], quoting Scheinkman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C237:1, at 6, citing O’Shea v O’Shea, 93 NY2d 187 [1999]).
“A counsel fee award helps reduce what would otherwise be a substantial advantage to the monied spouse. Such awards are ‘designed to redress the economic disparity between the monied spouse and the non-monied spouse’ and ensure that ‘the matrimonial scales of justice are not unbalanced by the weight of the wealthier litigant’s wallet’ ” (Kaplan v Kaplan, 28 AD3d 523, 523 [2d Dept 2006], quoting Frankel v Frankel, 2 NY3d 601, 607 [2004], quoting O’Shea v O’Shea, 93 NY2d 187, 190 [1999]).
This court is permitted to use its “sound discretion” when awarding counsel fees (see Matter of Grald v Grald, 33 AD3d 922 [2d Dept 2006]; Matter of Dalessandro v O’Brien, 285 AD2d 592 [2d Dept 2001]; Matter of Olesh v Auerbach, 227 AD2d 406 *940 [2d Dept 1996]; DeCabrera v Cabrera-Rosete, 70 NY2d 879, 881 [1987]). The court must consider the following factors when determining reasonable attorney’s fees: “the parties’ ability to pay, the nature and extent of the services rendered, the complexity of the issues involved, . . . counsel’s experience, ability, and reputation . . . [and] the resources of the party seeking an award” (see Matter of Israel v Israel, 273 AD2d 385 [2d Dept 2000] [citations and internal quotation marks omitted]; see Matter of Grald v Grald, 33 AD3d 922 [2006]). The court is mindful of the admonition of the Court of Appeals that counsel fees should not, as a matter of routine, be deferred to trial (see Frankel v Frankel, 2 NY3d 601, 607 [2004]).
The court is without authority to distribute the $45,000 in escrow, pendente lite, without the consent of the parties. These funds are part of equitable distribution and cannot be distributed prejudgment. It has been established that the general rule that a property which is the subject of a claim in equitable distribution should not be sold pendente lite (see Naane v Maslavi, 21 AD3d 1069 [2d Dept 2005] [the right to determine property rights is dependent on the dissolution of the marriage]). Nor can the court find at this juncture that the failure to seek reimbursement of the $100,000 loan to a friend is a wasteful dissipation pursuant to Domestic Relations Law § 236 (B) (5) (d) (11). Those are issues which can only be resolved by trial.
In seeking an award of counsel fees, the husband claims that the wife has unlimited resources, her trust fund, to pay for this litigation. The application for divorce and relocation was brought on June 26, 2008, six months after the settlement of custody issues in Family Court on December 17, 2007, where the parties agreed upon joint legal custody and the mother was to have primary residential custody for purposes of education, medical care and record keeping. The wife acknowledges the brief amount of time between the parties’ stipulation of settlement and her application for relocation, however, she alleges that the need to relocate is, in part, premised upon acts that occurred after the parties’ agreement and is a necessary step to protect herself and the children from the husband. Recently the Appellate Division, Second Department, in Prichep v Prichep (52 AD3d 61, 65 [2d Dept 2008]) distinguished between a pendente lite application for counsel fees and final award for counsel fees:
“When a party to a divorce action requests an interim award of counsel fees, as opposed to a final *941 award, no such detailed inquiry is warranted. An award of interim counsel fees ensures that the non-monied spouse will be able to litigate the action, and do so on equal footing with the monied spouse. Such an award Is appropriate “to prevent the more affluent spouse from wearing down or financially punishing the opposition by recalcitrance, or by prolonging the litigation” ’ (Gober v Gober, 282 AD2d 392, 393 [2001], quoting O’Shea v O’Shea at 93; see Charpié v Charpié, 271 AD2d 169 [2000]). If the playing field were not leveled by an award of interim counsel fees, ‘a wealthy husband could obtain the services of highly paid (and presumably seasoned and superior) matrimonial counsel, while the indigent wife, essentially, would be relegated to counsel willing to take her case on a poverty basis’ (Sassower v Barone, 85 AD2d 81, 89 [1982]).”
The Second Department further stated (at 65-66):
“In light of the important public policy underlying Domestic Relations Law § 237 (a), as acknowledged in Frankel, an award of interim counsel fees to the nonmonied spouse will generally be warranted where there is a significant disparity in the financial circumstances of the parties (see Delduca v Delduca, 304 AD2d 610, 611 [2003]; Celauro v Celauro, 257 AD2d 588 [1999]; Lieberman v Lieberman, 187 AD2d 567 [1992]; Flach v Flach, 114 AD2d 929 [1985]). Accordingly, courts should not defer requests for interim counsel fees to the trial court, and should normally exercise their discretion to grant such a request made by the nonmonied spouse, in the absence of good cause — for example, where the requested fees are unsubstantiated or clearly disproportionate to the amount of legal work required in the case articulated by the court in a written decision.”
The court, at this juncture, is loathe to find an associate at a major New York City law firm who admits to working 40 hours per week and earning $200,000 in 2007 a nonmonied spouse entitled to pendente lite counsel fees. Furthermore, defendant’s 2007 W-2 reflects 401(k) contributions in the amount of $20,500.

. “[A] party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party.” (See In re Sims, 534 F3d 117, 132 [2d Cir 2008], quoting In re Grand Jury Proceedings, 219 F3d 175, 182 [2d Cir 2000].)

. Defendant also claims that he has legal fees to defend a criminal action, but is not claiming that the court has authority to award such fees in accordance with Domestic Relations Law § 237.