OPINION OF THE COURT
Denis Hurley, J.
INTRODUCTION
Pending before the court are two child abuse cases com *836 menced by the Suffolk County Department of Social Services (DSS) pursuant to Family Court Act article 10. The respondent is the father of two siblings, ages three and five, who are the subjects of the proceedings. The substance of the petitions is that the respondent sexually abused the children. All of the allegations in both petitions are based upon statements made by the children either to the natural mother of the children, the DSS caseworker or the older child’s therapist.
For the court’s determination at this time is a motion by respondent’s counsel requesting that the court direct psychiatrist evaluations of the two children, and of their mother who is not a party to the proceeding. The basis for respondent’s application is that since the petitions are based upon the unsworn statements of the children "the only means which respondent has of defending these allegations is through an expert evaluation of the children and the natural mother”. Respondent’s attorney requests that the evaluation be performed by the psychiatrist who is presently seeing the respondent father.
The District Attorney has submitted an affidavit in opposition, contending that there exists "no express rule in New York authorizing” such examinations, and that respondent’s papers fail to demonstrate a substantial showing of need and justification.
The Law Guardian for the children, in opposition, urges that such an evaluation of the three-year-old child is inappropriate because of the likely resulting trauma, and that the need for the evaluation of the five-year-old child is outweighed by the potential harm to the child’s therapy.
The County Attorney has submitted no papers in response to respondent’s application.
ISSUE PRESENTED
The issue presented to this court is whether it is appropriate to direct a three- and five-year-old child, the subjects of the present child abuse proceedings, to submit to psychiatric examinations for the purpose of evaluating the credibility of their out-of-court accusations against their father.
DISCUSSION AND REVIEW OF APPLICABLE LAW
No authority has been cited by the respondent in support of his position, nor is the court aware of any reported decision in *837 this State in which the relief requested has been granted in an article 10 proceeding. For the reasons hereinafter stated, I am granting the respondent’s application to the extent of ordering a validation interview of both children, although the examining psychiatrist will be designated in a manner other than as requested.
Since such relief has apparently not been ordered previously, I will detail the rationale I employed in reaching my decision. The first stage of that rationale consisted of analyzing the Family Court Act article 10 evidentiary rules as applied to the facts of the present case. With the results of that analysis in mind, I then balanced the welfare of the children against[1] the respondent’s right to a fair trial. More specifically, the evidentiary rules and countervailing forces that I have considered are as follows:
1. UNDER FAMILY COURT ACT § 152 (B), CHILDREN MAY TESTIFY ABSENT AN OATH.
As mentioned previously, the children are now three and five years of age. The older child, Patrick, first complained of his father’s alleged activities to his mother in January 1984. Jessica’s complaints surfaced in May 1985.
Under Family Court Act § 152 (b), a child’s testimony may be received without the formality of an oath. This statutory exception to the general rule precluding the use of unsworn testimony in a civil proceeding (Richardson, Evidence § 391 [10th ed]) is "often indispensable to a full development of the facts”, in, inter alia, an article 10 proceeding. (Besharov, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 152, p 84; see generally, Deutsch, Testimony by Children in Child-Abuse, Neglect Cases, NYLJ, Apr. 11, 1985, p 1, col 3.)
2. GIVEN THE AGES OF THE CHILDREN IN THE PRESENT PROCEEDING, IT IS QUESTIONABLE WHETHER EITHER WILL TESTIFY.
Notwithstanding the provisions of Family Court Act § 152 (b), it is problematical at this point whether Patrick, and *838 particularly Jessica, will testify in the present proceeding. Even though an oath need not be administered, the children must be able to communicate facts to the court for their testimony to be received. Given their ages, either, or both, may not be called as a witness or, if called, may be unable to impart any meaningful information.
3. CHILDREN’S OUT-OF-COURT STATEMENTS ARE ADMISSIBLE, ALTHOUGH CORROBORATION IS REQUIRED FOR FINDING OF ABUSE.
Should the children not testify, that failure would not necessarily be fatal to the petitioner’s case. Family Court Act § 1046 (a) (vi) expressly authorizes the receipt of a child’s out-of-court statement to another, notwithstanding its hearsay character. As a result, it may well be that the children’s mother and the older child’s therapist, along with the Child Protective Services (CPS) worker who interviewed the children, will reiterate in court what the children told them about the respondent’s activities. While such hearsay testimony is admissible, section 1046 (a) (vi) provides that it is not sufficient for a finding of abuse unless corroborated.
If the children do not testify, and the only evidence incriminating the respondent consists of the. children’s out-of-court statements, what will be the source of the needed corroborative evidence? Not from the children’s physical condition presumably, for a perusal of the file suggests the absence of any confirming marks or pathology to the person of either Jessica or Patrick. (Compare, Matter of Tara H., 129 Misc 2d 508, 514 [Fam Ct, Westchester County 1985] ["Corroboration of the child’s out-of-court statements may take the form of apparently inflicted injures”; infectious gonorrhea in the case of five-year-old Tara]; Matter of Michael G., 129 Misc 2d 186, 191 [Fam Ct, Westchester County 1985] ["The pediatrician testified that examination of Mikey revealed a swollen, irritated penis and trauma to the anus, and that this condition could have been caused by sexual abuse. While far from conclusive in and of itself, this child’s physical condition is a corroborative factor”].)
4. IN THE PRESENT CASE, PETITIONER PRESUMABLY WILL ENDEAVOR TO ESTABLISH CORROBORATION VIA OPINION OF OLDER CHILD’S THERAPIST.
Without a confirming injury, or witness to the alleged *839 incidents, and given the distinct possibility that neither child may testify, the opinion of others as to the accuracy of the children’s out-of-court statements may become pivotal, for that opinion — if accepted by the court — could constitute the corroboration required to sustain a finding of abuse. (See, e.g., Matter of Tara H., supra; Matter of Michael G., supra.)
It is highly unusual for the County Attorney’s office not to fully and professionally respond to an adversary’s motion in an important matter, as I believe this to be. For whatever reason, however, they have remained silent vis-á-vis the relief requested by the respondent. Accordingly, I have been required to speculate to some degree as to how petitioner intends to prove its case, for the nature and quantum of their proof bears on the need for a validation interview.
Presumably the petitioner will endeavor to qualify the older child’s therapist as an expert for purposes of validating that child’s complaints. If the past practice was followed in this case, that therapist was selected either by the mother of the children, or by Child Protective Services. Since the mother is in process of divorcing the respondent her objectivity is far from obvious. Accordingly, a professional of her choosing might be tainted by whatever animosity she may harbor, as reflected in the "history” she provided to the therapist, or otherwise. Even if the choice was made by Child Protective Services, their objectivity — as a party to this adversarial proceeding — is understandably open to question.
Precisely how petitioner intends to corroborate the younger child’s out-of-court statements is unclear. She has not been interviewed by a psychologist, psychiatrist or another professional with the requisite expertise to render an opinion as to her credibility.
Conceivably, an effort will be made at trial to argue that proof of abuse of Patrick (if corroborated by his therapist’s expert opinion) would constitute corroboration of the claims of Jessica. Such a position I suspect would allude to the language of Family Court Act § 1046 (a) (i), "proof of the abuse or neglect of one child * * * admissible evidence on the issue of the abuse * * * of any other child of * * * the respondent”, followed by the argument that since Jessica’s complaints as to what her father supposedly did to her factually parallel the complaints of her older brother, her testimony is corroborated by the showing of a "common scheme” or "practice of abuse” committed by the respondent. This dovetailing of Jessica’s *840 specific allegations with the proven acts against her older brother lends credence — or so the argument continues — to petitioner’s allegation that the respondent abused his daughter. That such proof would be relevant is one thing; that it would satisfy the previously mentioned corroboration requirements of Family Court Act § 1046 (a) (vi) is another. No New York court to my knowledge has ever accepted such an argument and I feel, on the facts presently before me, that the soundness of its underlying logic is debatable.
If the petitioner does not intend to pursue the questionable "section 1046 — common scheme” approach in trying to clear the corroboration hurdle requirement for Jessica, only one apparent alternative remains, i.e., to have her examined by Patrick’s therapist, or another for purposes of trial.
In sum, the success of the petitioner’s case under both petitions will almost certainly hinge on the opinion of others as to the truthfulness[2] of the children’s out-of-court statements. Under such circumstances, the respondent’s application may not be lightly dismissed notwithstanding its uniqueness in article 10 proceedings.
5. RESPONDENT’S APPLICATION FOR PERMISSION TO HAVE CHILDREN EXAMINED BY EXPERT CHOSEN BY HIM INVOLVES BALANCING INTERESTS OF CHILDREN AGAINST THOSE OF THEIR FATHER TO A FAIR TRIAL.
Against the above background, let us now consider the respondent’s application to have Jessica and Patrick examined by an expert of his choosing, for the purpose of assessing the accuracy of the children’s accusations. In doing so, a balance must be struck between the welfare of the children and the respondent’s rights to a fair trial.
It is axiomatic that Family Court Act article 10 — which has been labeled as the "Children’s Bill of Rights” — is directed at protecting children victimized by their parents or other caretakers. (Matter of Theresa C., 121 Misc 2d 15 [Fam Ct, Monroe County 1983]; People v Kenyon, 46 AD2d 409 [4th Dept 1975]; Matter of Maureen G., 103 Misc 2d 109 [Fam Ct, Richmond County 1980].) Indeed, "[d]ue process rights of respondents *841 preserved in other civil and criminal proceedings have been subordinated by the courts to effectuate the paramount purposes of the statute — that of protecting children” (Matter of Michael G., supra p 190).
That the needs of the children must be foremost in an article 10 proceeding is clear. Nonetheless, there are two sides to the equation. To deny the relief requested by the respondent solely upon the ground that it may have an adverse effect on either or both of the children would ignore the need to balance the countervailing factors involved. In our sadly belated quest to address the problem of child abuse, we must not lose sight of the obvious, viz., that no inference of child abuse is created by a mere accusation. As in any other case, the burden rests with the litigant making the charge to prove that it occurred.
While it is true that an article 10 proceeding does not seek to punish the alleged offender, the respondent’s stake in the outcome of the case is, nonetheless, tremendous — particularly where, as here, the charged violation is sexual in nature. His fitness as a parent — if not as a human being — has been placed under attack. If found to have abused his child, his standing in the immediate and extended family will be eroded, if not destroyed. Should the family unit disintegrate, his rights to visitation and custody will be significantly impacted. A second finding of child abuse — of the target child or another — could serve to terminate his parental rights. (See, Social Services Law § 384-b; Family Ct Act § 1052 [c].)
It must be remembered, also, that in some instances — admittedly rare — unfounded child abuse claims are the product of marital warfare. What better way for a vicious spouse to take the "wind out of the other’s sails” than by leveling such a charge?
In sum, I have endeavored to consider the interests of the children, as well as those of their father to a fair trial, recognizing the fundamental importance of both factors.
CHILDREN TO BE INTERVIEWED BY AN EXPERT AGREED TO BY PARTIES, OR, FAILING SUCH AGREEMENT, TO BE SELECTED BY THE COURT.
For the reasons discussed above, the need for a validation interview is manifest under the particular facts of this case. Otherwise the respondent will face a very serious charge, the outcome of which probably will depend on whether the trier of *842 fact accepts the necessarily somewhat subjective opinion of a validation expert selected by an adverse party.
But who should select the interviewer? Respondent claims that he should have that right, impliedly maintaining that since the petitioner selected its expert, he should have the corresponding right to select his; to the extent the views of the experts hired by the respective parties differ, that divergence will aid the court by framing the issue. That logic, while often applicable in tort, criminal and condemnation cases, among others, is not acceptable in a child abuse proceeding where the subject of the examination is the youngster.
Granted, petitioner had the opportunity to choose a therapist, who may be offered as an expert at trial in support of its position, but that was not done under court order. Here, respondent is seeking the court’s aid to properly prepare his defense. Aid will be furnished, but not at the risk of subjecting the children to an analysis geared to favor the respondent, as distinct from trying to objectively determine the accuracy of the children’s alleged accusations against their father. Therefore, respondent’s counsel is directed to contact the other attorneys on the case within 10 days of his receipt of this order to see if agreement can be reached on a. mutually acceptable professional to interview the two children. If an agreement is not reached, he is to contact me in writing of that fact — with copies to other counsel — and I will make the appointment. The cost of the examination in either event will be borne by the respondent since this is his application, as will the responsibility for scheduling the interviews.
The respondent’s further request for an order directing the children’s mother to be examined is denied. While the court is empowered to order the examination of "the parent * * * of any child within its jurisdiction” following the filing of a petition (Family Ct Act § 251), the moving papers are devoid of sufficient information to warrant the granting of such relief.

. The two interests are not necessarily antithetical, for a false finding of child abuse — based on a youngster’s out-of-court statements, corroborated solely by the opinion of some professional as to the accuracy of the statements — would certainly aggravate, rather than ameliorate, the child’s plight.

. Parenthetically, the court is not suggesting that a child of such tender years could concoct such a detailed scenario out of thin air, for I don’t believe that to be the case. However, it is certainly not inconceivable that a child could overhear and repeat, or be taught to say words which are meaningless to him but signify child abuse to adult listeners.