OPINION OF THE COURT
Sara P. Schechter, J.
Is the Family Court empowered to order psychiatric examinations of persons other than the respondent and subject *266 children in preparation for the dispositional phase of a child protective proceeding?
In the case at bar this court made a finding of abuse as to three-year-old twin girls pursuant to Family Court Act § 1012 (e) (iii), based on proof that one twin was sexually abused by the respondent father. The children are now, and at all relevant times have been, in the physical and legal custody of their mother, who resides with her parents. Some adult siblings of the mother also visit or reside from time to time in the mother’s home. The sex abuse occurred during visitation with the father. No allegations of abuse or neglect have been filed against the mother.
After the fact finding all counsel agreed that the respondent and the children should be evaluated by a court-appointed psychiatrist prior to disposition. Respondent also asks, however, that the court order examination of the children’s mother, the maternal grandparents and any of the maternal aunts and uncles who were living in or visiting the children’s home within three months of the abuse. The Law Guardian joins in this application and also asks that the paternal grandmother, with whom respondent resides, be examined as well. The Commissioner of Social Services contends that the court is without power to order examination of the mother, the grandparents or others residing in the same household as the children.
The court’s authority to order psychiatric examinations stems from section 251 of the Family Court Act, which provides, in pertinent part: "After the filing of a petition under this act over which the family court appears to have jurisdiction, the court may cause any person within its jurisdiction and the parent or other person legally responsible for the care of any child within its jurisdiction to be examined by a physician, psychiatrist or psychologist appointed or designated for the purpose by the court when such an examination will serve the purposes of this act”. Clearly, both the respondent father and the subject children are within the court’s jurisdiction. The controversy arises as to the scope of the phrase "the parent or other person legally responsible for the care of any child within its jurisdiction”.
The phrase "person legally responsible” is defined in two separate sections of the Family Court Act. The general definition (Family Ct Act § 119 [b]) states: " 'Person legally responsible for the child’s care’ includes the child’s custodian, guard *267 ian or any other person responsible for the child’s care at the relevant time.”
Article 10, the child protective article, sets forth a broader definition "[w]hen used in this article and unless the specific context indicates otherwise”. Family Court Act § 1012 (g) provides: " 'Person legally responsible’ includes the child’s custodian, guardian, any other person responsible for the child’s care at the relevant time. Custodian may include any person continually or at regular intervals found in the same household as the child when the conduct of such person causes or contributes to the abuse or neglect of the child.”
Petitioner contends that the term "parent” as used in section 251 encompasses only a respondent parent. This argument rests on petitioner’s strained construction of the relationship between two definitions appearing in section 1012 of the Family Court Act, that of "respondent” and that of "person legally responsible”. Family Court Act § 1012 (a) defines "respondent”: " 'Respondent’ includes any parent or other person legally responsible for a child’s care who is alleged to have abused or neglected such child”.
Petitioner argues that because some respondents are parents, all parents must be respondents, i.e., must be alleged to have abused or neglected the child, as a prerequisite to being ordered to undergo psychiatric examination. Not only is this argument illogical, but moreover it would render redundant in Family Court Act § 251, the entire phrase "and the parent or other person legally responsible for the care of any child within its jurisdiction”, since the respondent himself would already be a "person within [the court’s] jurisdiction”. Such an interpretation would run counter to the rule of statutory construction that "effect and meaning must, if possible, be given to the entire statute and every part and word thereof’. (McKinney’s Cons Laws of NY, Book 1, Statutes § 98 [a].)
Although there are undoubtedly significant constitutional limitations on the court’s authority to intrude into the life of a nonrespondent parent (Santosky v Kramer, 455 US 745 [1982]; Matter of Marie B., 62 NY2d 352 [1984]), it does not follow that every such statutory application is perforce unconstitutional. Even absent allegations of harm to a child, a parent’s discretion with regard to the rearing of the child is not unfettered. The reasonableness of the intrusion must be considered in light of the purposes to be served. (Meyer v Nebraska, 262 US 390 [1923]; McCartney v Austin, 31 AD2d 370 [1969].)
*268 In cases of sex abuse, even more than other forms of abuse and neglect, the court depends upon the reports of psychiatrists and psychologists for an understanding of the dynamics of the family. In the case before the court, the mother, the father and the children have never all been interviewed by the same professional, an investigatory defect which each expert witness testifying in the fact finding lamented. Neither the etiology nor the scope of the problem is as yet understood by the court.
Petitioner’s argument that the court does not need to know anything about the nonrespondent mother in this proceeding, since the court can neither remove the children from her custody nor order her to undergo therapy, disregards the variety and complexity of dispositional alternatives available to the court. The court may, for example, make an order of protection pursuant to Family Court Act § 1056 requiring the mother to arrange for psychotherapy or other needed services for the children and to permit specified visitation with the father. Moreover, pursuant to Family Court Act § 1054 the court may place a nonrespondent parent to whose custody the child is released under supervision of a child protective agency for up to 18 months. (See, Matter of Pratt v Pratt, 67 AD2d 771 [3d Dept 1979].) That section 1054 is applicable to nonrespondents becomes clear when it is read in conjunction with Family Court Act § 1057 which pertains to supervision of the respondent. Under section 1054 the court has a broad grant of authority to order the custodial parent to cooperate in obtaining medical, psychiatric and child guidance services for the child, to meet with or report to the supervising agency and to: "[D]o or refrain from doing any other specified act of omission or commission that, in the judgment of the court, is necessary to protect the child from injury or mistreatment and to help safeguard the physical, mental and emotional well-being of the child” (22 NYCRR 205.83 [b] [7]). To fashion dispositional orders which will both protect the children and promote, in the long term, a healthy and nurturing relationship between the respondent and his children, the court needs to know as much as possible about the entire relationship between the parents and the respondent and the subject children. If the court were to be wholly subject to the wishes of the nonrespondent parent in fashioning a disposition, the child protective proceeding might as well never have taken place.
Weighed against the court’s need for information is the comparatively minor intrusion which the examination imposes *269 on the nonrespondent mother. The examination will require only a few hours of her time and a willingness to discuss candidly personal matters which impinge profoundly on the lives of her children.
Although interviews with the grandparents and aunts and uncles, and observation of their interaction with the children, would also be useful, we can find no authority for ordering them to submit to such examination. The Family Court is a court of limited, statutory jurisdiction and is without equitable powers except where specifically conferred. (Matter of Pamela P. v Frank S., 59 NY2d 1 [1983].) Even if this court were possessed of all the powers of the Supreme Court, however, it is unlikely that we could compel the grandparents to participate in the evaluation. (See, Rosenblitt v Rosenblitt, 107 AD2d 292 [2d Dept 1985].)
The expanded definition of "person legally responsible for the child’s care” which includes "any person continually or at regular intervals found in the same household as the child” was designed to give the Family Court child protective jurisdiction over paramours, roommates, and relatives of the parents (Besharov, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 1012, at 268), but this form of custodianship is limited by the qualifying phrase "when the conduct of such person causes or contributes to the abuse or neglect of the child”. (Family Ct Act § 1012 [g].) Unlike "parents”, who are always parents whether or not named as respondents, member-of-household custodians are only custodians when they are alleged to have harmed the subject child. No such allegation has been made against any of the grandparents or the other relatives in the present case.
For the aforesaid reasons, it is hereby ordered that the Bureau of Mental Health Studies is directed to schedule appointments for the respondent, the nonrespondent mother and the subject children in its Kings County Family Court offices. Liam H. is directed to appear for his own appointments, and Mattie J. H. is directed to appear singly and to produce Heather and Crystal as scheduled.