(July 19, 1990)

■ In the Matter of JESSICA R., a Child Alleged to be Abused, by BRENDA W. FEDER, as Law Guardian, Appellant. WESTCHESTER COUNTY DEPARTMENT OF SOCIAL SERVICES et al., Respondents.—In a child protective proceeding pursuant to Family Court Act article 10, the Law Guardian appeals from so much of an order of the Family Court, Westchester County (Bellantoni, J.), entered January 5, 1989, as granted those branches of the father's motion which were to compel the production of his daughter Jessica R. for examinations by a medical doctor

and either a psychiatrist or psychologist of the movant's choice.

Ordered that the order is modified, by deleting the provision thereof which granted that branch of the father's motion which was to compel the production of Jessica R. for a physical examination by a physician of his choice, and substituting therefor a provision denying that branch of the motion; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements.

This child protective proceeding is brought by the Westchester County Department of Social Services pursuant to Family Court Act article 10, alleging that Jessica R. had been sexually abused by her father. Thereafter, the father moved, *inter alia,* for a physical examination and a psychiatric or psychological evaluation of Jessica R., to be conducted by licensed professionals of his selection. The Family Court granted this relief.

At the time of the father's motion, the Family Court had inherent power, under Family Court Act § 251, to subject any person in its jurisdiction to an examination by a physician, psychiatrist or psychologist appointed or designated for that purpose by the court. This statutory provision, applicable in general to all proceedings under the Family Court Act, expressly required the examination to be performed by a court-appointed professional and not one chosen by a party to the proceeding *(see, Matter of Michelle A.,* 140 AD2d 604; *Matter of Crystal H.,* 135 Misc 2d 265; *Giraldo v Giraldo,* 85 AD2d 164, 172). Effective July 24, 1989, the Legislature amended Family Court Act § 1038 (c)—a discovery statute applicable to child protective proceedings—to provide that "[a] respondent or the law guardian may move for an order directing that any child who is the subject of a proceeding under this article [art 10] be made available for examination by a physician, psychologist or social worker selected by such party or law guardian. In determining the motion, the court shall consider the need of the respondent or law guardian for such examination to assist in the preparation of the case and the potential harm to the child from the examination. Nothing in this section shall preclude the parties from agreeing upon a person to conduct such examination without court order." With few exceptions not relevant herein, an appellate court, as a general rule, gives effect to the applicable law as it exists at the time of the appeal and not in accordance with the law as it was at the time of the original determination *(see, Kelly v Long Is. Light. Co.,* 31 NY2d 25, 29, n 3; *Matter of Sabatino,* 59 AD2d 992; *see*

*generally,* 10 Carmody-Wait 2d, NY Prac § 70:279; 4 NY Jur 2d, Appellate Review, § 400). Accordingly, the propriety of the granting of the father's applications must be assessed in accordance with Family Court Act § 1038 (c).

In many child protective proceedings, the most damaging evidence a respondent must face is hearsay or unsworn testimony of the subject child admitted under Family Court Act § 1046 (a) (vi) *(see, Matter of Meyer,* 132 Misc 2d 415, 417-418). Furthermore, psychiatric and psychological validation evidence is finding wide acceptance in child protective proceedings as corroborative proof of the child's hearsay statements and unsworn testimony *(see, Matter of Nicole V.,* 71 NY2d 112; *Matter of Carew,* 131 Misc 2d 835; *Dutchess County Dept. of Social Servs. v Bertha C.,* 130 Misc 2d 1043; *Matter of Tara H.,* 129 Misc 2d 508; *Matter of Michael G.,* 129 Misc 2d 186). An expert confirms or disaffirms the existence of " 'intrafamilial child sex abuse syndrome' " *(Matter of Michael G., supra,* at 192) predicated upon the observation of a "cluster of behaviors" *(Matter of Michael G., supra,* at 192).

It cannot be seriously disputed that the information sought by the father from an examination of the allegedly abused child by either a psychiatrist or a psychologist is material and necessary to the preparation of his defense. Expert testimony derived from such examinations will "inform the court of the test subject's involuntary bodily reactions when asked specific questions, information which the court, as trier of the facts, could neither obtain nor interpret otherwise" *(Matter of Meyer, supra,* at 419). Moreover, the art or science of psychiatry and psychology "is not so precise that the opinion of a single 'impartial' expert resolves all issues * * * Rather, the reverse is true—the larger the pool of experts, the greater the stream of potentially useful information made available to the court" *(Rosenblitt v Rosenblitt,* 107 AD2d 292, 298 [Lazer, J. P., dissenting]), to avoid the potentially "draconian results of either an erroneous finding of abuse against a parent or an erroneous dismissal" *(Matter of Meyer, supra,* at 419). Thus, in the absence of special circumstances or potential harm to the subject child, the fact that a validation interview had previously been conducted does not render an examination of the infant whose condition is in controversy by a psychologist or psychiatrist of the respondent's selection unjustified. Here, the mere fact that Jessica R. is a child of tender years, albeit a serious consideration, does not override the demonstrated need for such an examination to be conducted by a qualified professional capable of minimizing any possible stress stem-

ming from the examination. This discovery device is readily distinguishable from an examination before trial conducted by the adversary's attorney, which could be traumatic to a child of tender age and might result in harm to the child's well-being due to its potential for intimidation and embarrassment (see, *Matter of Maria F.*, 104 Misc 2d 319, 322-323). Accordingly, we conclude that so much of the order as grants the respondent's application to produce Jessica R. for an evaluation by a qualified psychiatrist or psychologist of his choice was proper.

However, upon our review of this record, it was an improvident exercise of discretion to direct Jessica R. to be produced for a second physical examination by a physician. The records of the doctor who already conducted a medical examination of Jessica R., discloses that the first attempt to complete the examination was aborted due to the child's excessive anxiety and fright. Upon the child's return for the completion of vaginal and rectal cultures, Jessica R. had to be placed under light sedation. Under these circumstances, the potential harm to Jessica R. outweighs the father's need for a second physical examination, which need can be readily satisfied by employing other available discovery devices. Kooper, J. P., Rubin and Eiber, JJ., concur.

Rosenblatt, J., concurs in part and dissents in part, and votes to reverse the order insofar as appealed from, and to remit the matter to the Family Court, Westchester County, for a new determination, with the following memorandum: I agree with the majority decision insofar as it reverses so much of the order as directs another physical examination of the child. My dissent relates to the psychological examination only.

At the time the court ordered the examination, Family Court Act § 1038 (c) was not in effect, and a Family Court Judge was empowered only to authorize a court-appointed expert to conduct the examination (Family Ct Act § 251). Six months after the entry of the order appealed from, the Legislature enacted Family Court Act § 1038 (c). Because it authorizes an examination in a more adversarial context, the statute contemplates the exercise of judicial discretion in weighing the benefits of examination as against any potential harm to the child.

The exercise of that discretion, I believe, calls for some individualized inquiry, although not necessarily a full-blown hearing. If this court is to now exercise its discretion in

applying and weighing the considerations set forth in a statute that did not exist at the time of the Family Court order, it must be based on more information than we have in this record. For that reason, I would remit the matter to the Family Court for exercise of its informed discretion, taking into account the criteria set forth in the statute.

Miller, J., concurs is part and dissents in part, and votes to reverse the order insofar as appealed from, and to deny those branches of the father's motion which were to compel the production of the child for a physical examination, and for a psychiatric or psychological examination, with the following memorandum: I also concur with the majority decision insofar as it denies that branch of the father's motion which was to compel the production of his daughter for another physical examination. I respectfully dissent from so much of the majority decision as affirms that portion of the Family Court's order as requires six-year-old Jessica to be produced for a second examination by a psychologist or psychiatrist selected by her father, the respondent in this abuse proceeding. I disagree with the conclusion of my colleague, Justice Rosenblatt, that the record is insufficient to determine the applicability of Family Court Act § 1038 (c), as I find that this record amply supports a rejection of the father's application for discovery.

The law originally applicable to the order appealed from was enunciated in *Matter of Michelle A.* (140 AD2d 604), where this court reversed an order of the Family Court granting the respondent's motion to have several children examined by a psychiatrist of her choosing. In reversing the order of the Family Court and remitting the matter to it for further proceedings, we stated *(supra,* at 605): "Nevertheless we find that it was inappropriate for the court to order an examination of the children by the mother's psychiatrist. Family Court Act § 251 gives the court the inherent power to subject any person in its jurisdiction to an examination by a 'physician, psychiatrist or psychologist *appointed or designated for the purpose by the court'* (emphasis added). The statute makes it clear that the examination should be done by a court-appointed professional and not one chosen by a party to the proceeding *(see, Matter of Crystal H.,* 135 Misc 2d 265; *Giraldo v Giraldo,* 85 AD2d 164, 172, *appeal dismissed* 56 NY2d 804; *Matter of Grado v Grado,* 44 AD2d 854; *see also, Matter of Dara R.,* 119 AD2d 579)".

Thus, we are all in accord that the order appealed from permitting the father to select a physician or psychiatrist or psychologist of his choice to examine Jessica was contrary to

the law as it existed on January 5, 1989 *(see, Matter of Michelle A., supra)*, when the order was entered. However, as the majority notes, it is applying the applicable law as it exists at the time of the appeal rather than the law at the time of the original determination. Therefore, we must apply Family Court Act § 1038 (c), which went into effect on July 24, 1989, six months after entry of the order appealed from. While the prior law required evaluations to be performed by court-appointed experts pursuant to Family Court Act § 251 *(Matter of Michelle A, supra)*, the new statute permits second examinations to be conducted by other than court-appointed professionals under certain circumstances, upon the application of a respondent, Law Guardian, or social services worker. The statutory language explicitly requires that the court apply a balancing test prior to subjecting the alleged child victim to duplicative physical or psychiatric examinations, by expressly mandating that "the court *shall* consider the need of the respondent or law guardian for such examination to assist in the preparation of the case *and* the potential harm to the child from the examination" (emphasis added). The court is thus specifically required to weigh the potential harm to the child from the examination against the need of the respondent or the law guardian for such an examination in order to assist in the preparation of the case *(see, Matter of Nicole,* 146 Misc 2d 610 [where the court denied the respondent's application for a second examination pursuant to Family Ct Act § 1038 (c) after applying the statutory balancing test]).

In applying the balancing test required by Family Court Act § 1038 (c) to the facts at bar, I find the scale is tipped heavily against granting the father's application for a second psychiatric/psychological evaluation of Jessica by a professional chosen by him. The potential trauma to Jessica substantially outweighs the father's need for this discovery in order to prepare for the trial of this proceeding in which he, as the respondent, is alleged to have abused her.

The allegations of sexual abuse by the father were first enunciated by the mother in response to the father's petition for a writ of habeas corpus. At that time, in court, the mother alleged that the child had stated to her that she had been sexually abused. As a result of the mother's allegations, the court ordered an immediate investigation. The child was then interviewed by a caseworker from the Westchester County Department of Social Services (hereinafter the DSS) and was examined by a physician and therapist selected by the DSS. Based upon the results of these evaluations, the DSS filed a

petition alleging that the father had sexually abused the child in July 1988 in that he "placed his hand under the underpants of the subject child, Jessica [and] placed his penis on the subject child['s] crotch and ejaculated on her dress". Even the initial examinations which were essential to the founding of the allegations and the filing of the abuse petition by the DSS were significantly traumatic to this child. The pediatrician, Doctor Tames, was required to examine the child physically on two separate occasions under sedation due to her excessive anxiety. Dr. Virginia Strand, D.S.W., was retained to evaluate the child in order to determine whether the child's presentation was consistent with child sexual abuse syndrome. She was required to meet with the child on several occasions before Jessica felt comfortable enough to communicate with her with regard to the allegations of sexual abuse.

Significantly, in the case at bar, the father has not challenged the qualifications, bias or independence of the experts who have already examined the child, although the curricula vitae of both experts have been disclosed to him. Dr. Tames is director of the division of adolescent medicine and an assistant professor of pediatrics at New York Medical College, Westchester County Medical Center. He is a board-certified pediatrician and a diplomate of the National Board of Medical Examiners. Dr. Virginia Strand, with a D.S.W. degree from Columbia University School of Social Work, is an assistant professor at Fordham University. She is a director of the child sexual abuse training program there, in charge of over-all administration of specialized training programs for mental health professionals and child welfare staff working in the area of child sexual abuse. She was also an adjunct assistant professor at Columbia University School of Social Work. There is no claim that either expert was selected by the child's mother or that she had any prior or present relationship with them. Even if the child's therapist had had a relationship with her, the Court of Appeals has held that, under such circumstances, the therapist should not be disqualified from giving evidence that the child was sexually abused, reasoning that any alleged bias of the expert could be addressed on cross-examination by the respondent (Matter of Nicole V., 71 NY2d 112).

Moreover, the father, although he was provided with copies of the forensic evaluations and records, has failed to suggest that the performed examinations were in any respects inadequate or deficient (see, Rosenblitt v Rosenblitt, 107 AD2d 292). This court, in Rosenblitt, a custody proceeding, denied further

psychiatric evaluation of one spouse by the other's privately retained expert, holding that where court-ordered forensic examinations have been conducted, and not a single reason was presented in support of the application for further evaluations, it would be an abuse of discretion to compel an adult party to submit to duplicative, harassing evaluations by a privately retained expert *(see, Rosenblitt v Rosenblitt, supra,* at 294). A nonparty child victim deserves no less protection. Our reasoning in *Rosenblitt* is appropriate to this abuse proceeding, where the father has failed to demonstrate that he needs additional examinations for preparation of his case.

That the interrogation of a young child regarding incidents of sexual abuse may be highly traumatic has been acknowledged by the courts *(see, Matter of Michelle A., supra; Matter of Tara H.,* 129 Misc 2d 508, 509; *Matter of Carew,* 131 Misc 2d 835; *Matter of Maria F.,* 104 Misc 2d 319; *People v Beauchamp,* 126 Misc 2d 754, *mod on other grounds* 74 NY2d 639), as well as by the explicit terms of the new statute, Family Court Act § 1038 (c), which recognizes that the examination may be potentially harmful.

Nor will a denial of the father's application for an evaluation by experts of his own choosing deny his due process rights under the circumstances, or preclude his reasonable preparation for trial. He has received the disclosure obtained by the DSS and the forensic experts' reports and records. He is in fact entitled to utilize all normal discovery processes other than the unjustified intrusive subjection of the child to additional physical and psychosexual evaluations. He will be able to depose the experts and parties prior to trial,[1] to cross-examine the experts, as well as to present his own expert, who will have had an opportunity to evaluate the reports that have been provided by the impartial experts. There is no reason to assume that experts provided by the father would be more capable of evaluating the child, or more honest in the evaluation of the child, than those selected by the DSS, a party unrelated to either the father or the mother in this case.[2]

The majority's belief that multiple evaluations will increase the flow of useful information to the court is, I believe,

---

1. Indeed, the record of Family Court proceedings occurring subsequent to entry of the order appealed from make it clear that such depositions have been held.

2. Videotaping of the initial validation interview should be considered as a discovery device, more appropriate and less invasive than multiple examinations by experts selected by the accused.

erroneously based on protections afforded criminal defendants and patients whose mental capacity is in doubt *(see,* CPL 730.20; Family Ct Act § 322:1; Mental Hygiene Law § 9.27; *see, Rosenblitt v Rosenblitt, supra,* at 298 [dissent by Lazer, J. P.]). However, the duplicative or multiple discovery procedures afforded to persons facing trial or commitment, or, to cite another example in civil case law, to complex, multiparty products liability litigation, have no applicability to the child victims in abuse proceedings, where such procedures applied to a child may do great harm.

The new statutory language merely requires that prior to granting the requested discovery, the court must weigh the trauma to the child against the need of the respondent (or Law Guardian) to prepare for trial, creating no presumption either in favor of or adverse to a second examination *(but cf., Matter of Nicole, supra).* However, the amendment must be construed and interpreted consistently with the purposes and principles of the Family Court Act which it amends, namely the protection of children.

It is significant that in criminal court proceedings as well as in Family Court proceedings, discovery with regard to children is restricted in view of the risk of additional trauma to the child victim. Where a defendant charged with rape, sodomy and sexual abuse of children aged four to six, brought an application for an order pursuant to CPL 240.40 directing that the infant complainants be produced for physical and/or psychiatric examinations by physicians retained by defendant, the motion was denied, the court finding: "[t]hese children are not discoverable items * * * The emotional trauma resulting from child sexual abuse is more serious than the physical trauma * * * In balancing rights, a court should not function in a vacuum. It must be understood and conceded that a court-directed examination by defendant's psychiatrists would be aimed at proving his allegations. The infants would be questioned for the purpose of determining whether they were persuaded to testify falsely about their sexual abuse at the outset. They would not be interrogated with therapy in mind. It will be another ego diminishing episode—a recurring trauma—setting the stage for traumatic repercussions * * * The medical profession has a responsibility to these children—to heal them. The courts have equal responsibility—to protect them. * * * While the court has the continuing burden to protect the rights of the accused—it has at least an equal obligation to safeguard the welfare of minors" *(People v Beauchamp, supra,* at 756-757).

The State's traditional " ' "transcendent interest in protecting the welfare of children" ' " was recently reaffirmed by the United States Supreme Court and applied to permit closed-circuit television taping of child witnesses in criminal proceedings, where necessary to protect the child *(Maryland v Craig,* 497 US —, —, 110 S Ct 3157, 3168).

Concern for the rights and well-being of children is even more appropriate in Family Court protective proceedings than in criminal proceedings. The defendant in a criminal proceeding risks penalties of conviction of a crime and subsequent incarceration, while the respondent in an abuse proceeding risks neither incarceration nor a civil fine. Contrary to the penal aspect of criminal proceedings, the purpose of article 10 proceedings is to "establish procedures to help protect children from injury or mistreatment and to help safeguard their physical, mental and emotional well-being. It is designed to provide a due process of law for determining when the state, through its family court, may intervene against the wishes of a parent on behalf of [the] child so that [the child's] needs are properly met" (Family Ct Act § 1011).

Although the father contends that additional physical and psychological examinations of the child would be performed in a stressless manner, such examinations have been denied because of the potential resulting trauma to the child. In *Matter of Carew* (131 Misc 2d 835, *supra),* the court denied the father's application for psychiatric examination of the subject children by his own psychiatrist, reasoning that the role of expert testimony where experts are hired by the respective parties differs in tort, criminal, and condemnation cases, from an acceptable standard in child abuse proceedings, where the subject of the examination is the child. In *Matter of Maria F.* (104 Misc 2d 319, *supra),* the father was denied disclosure by way of oral deposition of his 12-year-old child, the court holding it was not appropriate to direct a child of tender years to appear for an examination before trial in an abuse proceeding.

The provisions of Family Court Act § 1038 (c) create a disturbing anomaly to the general principles of discovery in legal proceedings. The child, alleged to be the victim in abuse proceedings, is the subject of, but not the party to, those proceedings, and may be regarded as a nonparty witness. Family Court Act article 10 expressly protects these children consonant with due process, so as "to help safeguard their physical, mental and emotional well-being" (Family Ct Act § 1011). There appears to be no precedent for the invasive

discovery of such nonparty witnesses by requiring their examination by physicians or psychiatrists chosen by any party to civil or criminal proceedings, other than under exceptional circumstances where the mental capacity of the witness is in issue *(see, e.g., People v Parks,* 41 NY2d 36; *People v Graham,* 117 AD2d 832; *People v Knowell,* 94 AD2d 255). To make an exception for the examination of children in child protective proceedings and thereby subject them to invasive discovery may not merely subvert Family Court Act article 10, but deprive child victims of their due process rights. That Fourteenth Amendment protections are not intended for "adults only" was long ago recognized by the United States Supreme Court *(In re Gault,* 387 US 1).

My review of the legislative history underlying the new statute casts little light on whether the concerns noted herein were recognized or considered by the Legislature. The passage of the statute appears not to have generated noteworthy exposure or discussion or to have prompted any public controversy, notwithstanding its potentially significant consequences. Nonetheless, it clearly overrules prior case law. While its constitutionality has not as yet been tested, and is not raised on the subject appeal, in view of its context within the Family Court Act, and its aberrational nature in regard to discovery proceedings, the unique discovery which it makes available should be permitted only where special circumstances tip the balance in favor of the accused's needs rather than the victim's protection from further injury *(e.g.,* where the victim appears less than highly vulnerable, or well-qualified experts are not available to the court). As applied to the instant case, where Jessica, now six years old, has revealed her vulnerability by her traumatic response to the initial evaluations performed by highly skilled experts not retained by either of her parents, and where the father has had substantial discovery and more than reasonable opportunity to prepare for his defense, application of the balancing test in Family Court Act § 1038 (c) requires denial of the additional examinations.

Accordingly, the order directing that Jessica be produced for second evaluations by a physician and psychologist or psychiatrist selected by her father should be reversed insofar as appealed from.

